# Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable

Civil Action Number:  1:17-CV-02280
Claimant:                   Joseph S. Fedorchak
Account Number:      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

| Court Transcript Index | Page No. | No. of Pages |
|---|---|---|
| AC Denial (ACDENY), dated 10/13/2017 | 1-6 | 6 |
| Misc Medical Records (MDF F), dated 04/10/2017, from Wilkes-Barre VA Medical Center | 7 | 1 |
| Misc Medical Records (MDF F), dated 03/29/2017, from Wilkes-Barre VA Medical Center | 8-13 | 6 |
| Outgoing ODAR Correspondence (OUTODARC), dated 03/24/2017 | 14-15 | 2 |
| AC Correspondence (ACCORR), dated 03/21/2017 | 16-17 | 2 |
| Progress Notes (PROGRESSNOTES), dated 03/02/2017 to 03/08/2017, from Wilkes-Barre VA Medical Center | 18-22 | 5 |
| Radiology Report (RADIOREP), dated 02/16/2017 to 03/02/2017, from Wilkes-Barre VA Medical Center | 23-31 | 9 |
| ALJ Hearing Decision (ALJDEC), dated 07/14/2016 | 32-48 | 17 |

DATE: February 15, 2018

The documents and exhibits contained in this administrative record are the best copies obtainable.



SOCIAL SECURITY ADMINISTRATION

**Refer to:** TLC
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

Office of Disability Adjudication
  and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: October 13, 2017

## NOTICE OF APPEALS COUNCIL ACTION

Mr. Joseph Stanley Fedorchak
22 Edge Rock Dr
Drums, PA 18222

This is about your request for review of the Administrative Law Judge's decision dated
July 19, 2016. You submitted reasons that you disagree with the decision. We considered the
reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the
reasons do not provide a basis for changing the Administrative Law Judge's decision.

### We Have Denied Your Request for Review

We found no reason under our rules to review the Administrative Law Judge's decision.
Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the
Commissioner of Social Security in your case.

### Rules We Applied

We applied the laws, regulations and rulings in effect as of the date we took this action.

Under our rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We receive additional evidence that you show is new, material, and relates to the period
  on or before the date of the hearing decision. You must also show there is a reasonable

probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

**Additional Evidence**

You submitted records from Whole Life Center dated from January 29, 205 to May 11, 2016. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

You submitted medical record from Wilkes-Barre VA Medical Center dated from February 16, 2017 to March 10, 2017 (10 pages), March 2, 2017 to March 8, 2017 (6 pages), March 29, 2017 (7 pages) and April 10, 2017 (2 pages). The Administrative Law Judge decided your case through July 19, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 19, 2016.

If you want us to consider whether you were disabled after July 19, 2016, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use September 19, 2016, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

You have the right to file a new application at any time, but filing a new application is not the same as filing a civil action. If you disagree with our action and file a new application instead of filing a civil action, you might lose some benefits or not qualify for any benefits. So, if you disagree with our action, you should file a civil action within 60 days as described below.

**If You Disagree With Our Action**

If you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action.

If you do not ask for court review, the Administrative Law Judge's decision will be a final decision that can be changed only under special rules.

**How to File a Civil Action**

You may file a civil action (ask for court review) by filing a complaint in the United States District Court for the judicial district in which you live. The complaint should name the Commissioner of Social Security as the defendant and should include the Social Security number(s) shown at the top of this letter.

You or your representative must deliver copies of your complaint and of the summons issued by the court to the U.S. Attorney for the judicial district where you file your complaint, as provided in rule 4(i) of the Federal Rules of Civil Procedure.

**2**

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Social Security Administration's Office of the General Counsel that is responsible for the processing and handling of litigation in the particular judicial district in which the complaint is filed.  The names, addresses, and jurisdictional responsibilities of these offices are published in the <u>Federal Register</u> (70 FR 73320, December 9, 2005), and are available on–line at the Social Security Administration's Internet site, http://policy.ssa.gov/poms.nsf/links/0203106020.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Attorney General of the United States, Washington, DC 20530.

**Time To File a Civil Action**

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter.  We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file.  You must have a good reason for waiting more than 60 days to ask for court review.  You must make the request in writing and give your reason(s) in the request.

You must mail your request for more time to the Appeals Council at the address shown at the top of this notice.  Please put the Social Security number(s) also shown at the top of this notice on your request.  We will send you a letter telling you whether your request for more time has been granted.

**About The Law**

The right to court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act.  This section is also Section 405(g) of Title 42 of the United States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is provided for in Section 1631(c)(3) of the Social Security Act.  This section is also Section 1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

See Next Page

**3**

Joseph Stanley Fedorchak (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)                                    Page 4 of 4

**If You Have Any Questions**

If you have any questions, you may call, write, or visit any Social Security office.  If you do call or visit an office, please have this notice with you.  The telephone number of the local office that serves your area is (866)388-9878.  Its address is:

> Social Security
> 88 S Laurel St
> Hazleton, PA 18201-9965

/s/ *Laura Middleton*

Laura Middleton
Appeals Officer

Enclosure:  Order of Appeals Council

**4**

Joseph Stanley Fedorchak
Claimant

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
Social Security Number

Wage Earner

Social Security Number

## AC EXHIBITS LIST

| EXHIBIT NO. | DESCRIPTION | NO. OF PAGES | COURT TRANSCRIPT PAGE NO. |
|---|---|---|---|
| Exhibit 4B | Request for Review of Hearing Decision/Order dated September 19, 2016 (3 pages) | | |

**5**

Social Security Administration
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

## ORDER OF APPEALS COUNCIL

**IN THE CASE OF**                                    **CLAIM FOR**

Period of Disability
Disability Insurance Benefits

Joseph Stanley Fedorchak
(Claimant)

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

(Wage Earner)                                         (Social Security Number)

The Appeals Council has received additional evidence which it is making part of the record.
That evidence consists of the following exhibits:

Exhibit 4B          Request for Review of Hearing Decision/Order
                    dated September 19, 2016 (3 pages)

Date: October 13, 2017

**6**

# Lab Results

---- PLASMA CHEMISTRIES I ----

| PLASMA | Glucose | BUN | CREAT | SODIUM | POTASSI | CHLOIDE |
|---|---|---|---|---|---|---|
| Ref range low | 65 | 6 | .5 | 135 | 3.6 | 101 |
| Ref range high | 99 | 20 | 1.2 | 145 | 5 | 111 |
| | mg/dL | mg/dL | mg/dL | mmol/L | mmol/L | mmol/L |

| [a] Mar 08, 2017 12:51 | | | | | 4.4 | |

| PLASMA | CO2 | eGFR | PHOSPHO | CALCIUM | MAGNES | PROTEIN | ALBUMIN |
|---|---|---|---|---|---|---|---|
| Ref range low | 21 | | 2.5 | 7.9 | 1.8 | 6.7 | 3.2 |
| Ref range high | 31 | | 4.6 | 9.9 | 2.5 | 8.2 | 5.5 |
| | mmol/L | | mg/dL | mg/dL | mg/dL | g/dL | g/dL |

| PLASMA | ALK PHS | SGOT | SGPT | T.BILI | D.BILI | LDH | AMYLASE |
|---|---|---|---|---|---|---|---|
| Ref range low | 42 | 10 | 10 | .2 | 0 | 91 | 25 |
| Ref range high | 121 | 42 | 60 | 1 | .2 | 180 | 125 |
| | IU/L | IU/L | IU/L | mg/dL | mg/dL | IU/L | U/L |

| PLASMA | LIPASE | UR ACID | GGTP | STA-CPK | LACTATE | Ammonia | CPK |
|---|---|---|---|---|---|---|---|
| Ref range low | 7 | 2.6 | 7 | 25 | 0.3 | 11 | 25 |
| Ref range high | 58 | 7.2 | 64 | 120 | 2.5 | 35 | 120 |
| | IU/L | mg/dL | IU/L | UI/L | MMOL/L | umol/L | IU/L |

| PLASMA | CK-MB | CPK-MB% | TRO I | BNP | CHOLEST | TRIGLYC |
|---|---|---|---|---|---|---|
| Ref range low | 0 | 0 | | 0 | 140 | 35 |
| Ref range high | 5 | 4 | | 100 | 200 | 160 |
| | ng/mL | % | ng/ml | pg/mL | mg/dL | mg/dL |

| PLASMA | HDL | LDL-CAL | LDL |
|---|---|---|---|
| Ref range low | 27 | | |
| Ref range high | 67 | | |
| | mg/dL | mg/dL | mg/dL |

a. Ordering Provider: Samia Bouleghlem MD

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
FEDORCHAK,JOSEPH S
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA 18222

VISTA Electronic Medical Documentation
Printed at wilkes-Barre

7
Page 9

WILKES-BARRE VAMC
1111 EAST END BOULEVARD
Mail Stop: 16B
WILKES-BARRE, PA  18711

# DEPARTMENT OF
# VETERANS AFFAIRS

DATE: 4/10/2017
In Reply Refer To: 16B
SSN: 7882

**JOSEPH S FEDORCHAK**
**22 EDGE ROCK DRIVE**
**DRUMS, PA 18222**

RE: ROI Plus Request for JOSEPH S FEDORCHAK

Dear MR FEDORCHAK:

We have received your request for information on April 10, 2017.

This individually identifiable information is privileged. Its confidentiality
should be maintained along with appropriate security safeguards to protect
against individual harm (identity theft), embarrassment, or inconvenience.

We thank you for your support of our mission.  If you wish to discuss anything
in this letter with me, please contact me at 570-824-3521, ext. 7165.

Sincerely,


**DONNA E BOYER**
**Supervisory, Medical Record Administrator**


Prepared by:  RONALD T LOEFFLER - Release of Information

8

# SOCIAL SECURITY ADMINISTRATION

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: March 21, 2017

*2M622882*

Joseph Stanley Fedorchak
22 Edge Rock Dr
Drums, PA 18222

Dear Mr. Fedorchak:

We have received a request for review of the Administrative Law Judge's action in this case.

**You May Send More Information**

You may send us more evidence or a statement about the facts and the law in this case.

Any more evidence must be new *and* material to the issues considered in the hearing decision dated July 14, 2016.

**We Will Not Act For 25 Days**

If you have more information, you must send it to us within 25 days of the date of this letter. We will not allow more time to send information except for very good reasons.

*[handwritten notes:]*

1. slight heart murmur
2. Kidney function flow rate worsened from 54 to 48
3. 2nd Eye laser surgery on right eye for bleeding now have some night vision issues
4. waiting on breathing test results
5. in sleep apnea test now
6. had 2nd ultra sound on kidney's + bladder
7. pancreas insulin output test is normal as
8. these are the VA records from date of last time to now

Our address and FAX number are:

**ADDRESS:**       Appeals Council
Office of Disability Adjudication and Review
ATTN: Branch 10, Suite 1000
5107 Leesburg Pike
Falls Church, VA 22041-3255

**9**

*If you send us anything by fax, please do not send duplicates by mail.  That may delay processing your claim.*



## What Happens Next

If we do not hear from you within 25 days, we will assume that you do not want to send us

**See Next Page**

04/14/2017  11:11   5707354593                JOSEPH FEDORCHAK                    PAGE   04
FEDORCHAK,JOSEPH S 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 [WXP] PULMONARY FUNCTION TEST Image 1 out of 1 CP PFT 03/29/2017 13:32:23   Page 1 of 2
Case 3:17-cv-02200-CCC-SES  Document 9-2  Filed 03/19/18  Page 12 of 49

# VA MEDICAL CENTER
## 1111 EAST END BLVD
## WILKES BARRE PA,18711

## 570-824-3521

Name: FEDORCHAK, JOSEPH S      Id: 211627882

Age: 50   Technician:      Room: op    Date: 03/29/17

Gender: Male    Race: Caucasian      Temp: 18     PBar: 741

Height(in): 72    Weight(lb): 181      Physician: BOULEGHLEM SAMIA

Smoker: No    How Long:    Quit: No      Stopped:

Cigarettes: No      Cigars: No      Pipe: No

## Spirometry/All Trials

| | Pre (BTPS) | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| Spirometry | | | | | | | | | |
| FVC | Liters | | | | | 3.91 | 3.92 | 3.90 | |
| FEV1 | Liters | | | | | 3.46 | 3.43 | 3.41 | |
| FEV1/FVC | % | | | | | 89 | 87 | 88 | |
| FEF25-75% | L/sec | | | | | 5.20 | 4.47 | 4.18 | |
| PEF | L/sec | | | | | 7.97 | 5.84 | 5.52 | |
| FET100% | Sec | | | | | 6.49 | 6.94 | 6.76 | |
| FEF/FIF50 | | | | | | 1.25 | 1.33 | 0.86 | |

| | | PRED | PRE-RX BEST | PRE-RX %PRED | POST-RX BEST | POST-RX %PRED | % Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 5.17 | 3.92 | 76 | | | |
| FEV1 | Liters | 4.19 | 3.46 | 83 | | | |
| FEV1/FVC | % | 81 | 88 | | | | |
| FEF25-75% | L/sec | 4.26 | 5.20 | 122 | | | |
| PEF | L/sec | 9.44 | 7.97 | 84 | | | |
| FET100% | Sec | | 6.49 | | | | |
| FEF/FIF50 | | <1.00 | 1.25 | | | | |
| | | | | | | | |
| MVV | L/min | 160 | 106 | 66 | | | |
| f | BPM | | 50 | | | | |

## Lung Volumes

| | | Ref | (BTPS) Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| TLC | Liters | 7.29 | 4.74 | 65 | | | |
| VC | Liters | 5.17 | 3.92 | 76 | | | |
| IC | Liters | 3.47 | 2.22 | 64 | | | |
| FRC N2 | Liters | 4.06 | 2.52 | 62 | | | |
| ERV | Liters | 1.74 | 1.65 | 95 | | | |
| RV | Liters | 2.34 | 0.82 | 35 | | | |
| RV/TLC | % | 34 | 17 | | | | |

## Diffusion

| | | | | |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 26.6 | 24.2 | 91 |
| DL Adj | mL/mmHg/min | 26.6 | 26.7 | 100 |
| DLCO/VA | mL/mmHg/min/L | 4.02 | 5.14 | 128 |

## MIPS/MEPS

| | | |
|---|---|---|
| PI max | cmH2O | 116 |
| PE max | cmH2O | 217 |

## Arterial Blood Gases

| | pH | PCO2 mmHg | PO2 mmHg | HCO3 meq/L | BE | Hb gm/dL | SaO2 % | P(A-a)O2 mmHg | FIO2 % |
|---|---|---|---|---|---|---|---|---|---|
| Lvl 1 | | | | | | | | | |

** = OUTSIDE  95% CONFIDENCE INTERVAL      Norm Set: Knudson (1983)      Version: IVS-0101-27-3b

Case 1:17-cv-02280-CCC-SES Document 9-2 Filed 03/19/18 Page 13 of 49

### VA MEDICAL CENTER
### 1111 EAST END BLVD
### WILKES BARRE PA,18711

## 570-824-3521

Name: FEDORCHAK, JOSEPH S                    Id: 211627882
Age: 50     Technician:                      Room: op      Date: 03/29/17
Gender: Male       Race: Caucasian           Temp: 18      PBar: 741
Height(in): 72     Weight(lb): 181           Physician: BOULEGHLEM SAMIA
Smoker: No     How Long:     Quit: No        Stopped:
Cigarettes: No            Cigars: No         Pipe: No



Comments
Pt had difficulty with F/V loop.   HGB was 11.7.

There is no obstructive lung defect indicated by the FEV1/FVC ratio. There is a mild restrictive lung defect. Diffusion capacity is within normal limits.

Delahanty, Thomas J M.D.

Page 2

12

APR 10, 2017 (15:50)     Cumulative Vitals/Measurements Report      Page 2
------------------------------------------------------------------------
01/09/17 (continued)

15:13
     B/P: 175/93*
15:13
     T:   97.0 F (36.1 C)
     P:   61
     R:   18
     B/P: 168/87*
     Wt:  181.40 lb (82.45 kg) (ACTUAL)
     Body Mass Index: 25
     Pulse Oximetry: 100%
     Pain: 0 - No pain
11/04/16
11:37
     P:   66
     B/P: 222/124* (R ARM, ADULT CUFF)
11:37
     T:   98.1 F (36.7 C)
     P:   68
     R:   16
     B/P: 213/127* (L ARM, ADULT CUFF)
     Ht:  71.81 in (182.40 cm) (ACTUAL)
     Wt:  187.80 lb (85.36 kg) (ACTUAL)
     Body Mass Index: 26
     Pulse Oximetry: 100%
     Pain: 0 - No pain
10/31/16
14:56
     B/P: 160/98* (R ARM, SITTING, CUFF-MANUAL)
14:56
     T:   98.2 F (36.8 C)
     P:   70
     R:   18
     B/P: 174/90* (R ARM, SITTING, CUFF-AUTOMATED)
     Ht:  72.00 in (182.88 cm) (ACTUAL)
     Wt:  188.40 lb (85.64 kg) (ACTUAL)
     Body Mass Index: 26
     Pulse Oximetry: 99%
     Pain: 0 - No pain

*** (E) - Error entry

FEDORCHAK,JOSEP   7882          OCT 1,1966    50 YRS   MALE          VAF 10-7987j
Unit:                          Room:
Division:                                                                    **13**

**SOCIAL SECURITY ADMINISTRATION**

Refer To: JOSEPH STANLEY FEDORCHAK

SSA ODAR OAO EXEC. OFFICE
5107 LEESBURG PIKE
FALLS CHURCH, VA 22041
Telephone: (877) 670-2722
Date: March 24, 2017

JOSEPH STANLEY FEDORCHAK
22 EDGE ROCK DR
DRUMS, PA 18222-1001

Dear JOSEPH STANLEY FEDORCHAK :

On May 1, 2017, we are changing the rules that the Appeals Council will apply when considering whether to review your case. Please read this notice closely.

**Rules We Will Apply**

Under our new rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- The Appeals Council receives additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must show that there is a reasonable probability that the additional evidence would change the outcome of the decision. You must also show "good cause" for why you missed informing us about or submitting it at least 5 business days before the date of your hearing. We explain "good cause" in the next section.

**14**

**Good Cause For Not Submitting Evidence Earlier**

Under our new rules, we will find that there is good cause for why you did not tell us about or give us the evidence at least 5 business days before the date of your hearing if you show that:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier;

OR

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

**Additional Evidence Submitted in Your Case**

Because your case was pending at the Appeals Council before our rule about when to give us evidence became effective, we will find that you showed good cause for not submitting additional evidence earlier. We will find that some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from telling us about or giving us the evidence earlier. We will make this good cause finding for additional evidence that you have already submitted and for additional evidence that you submit before we issue our action in your case.

**You must still show that the additional evidence is also new and material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision.**

**If You Have Any Questions**

If you have any questions, you may call or write the Appeals Council. Our telephone number and address are shown at the top of this letter.

Sincerely yours,

Social Security Administration



**15**

 SOCIAL SECURITY ADMINISTRATION

Office of Disability Adjudication
  and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone:  (877) 670-2722
Date: **March 21, 2017**

Joseph Stanley Fedorchak
22 Edge Rock Dr
Drums, PA 18222

Dear Mr. Fedorchak:

We have received a request for review of the Administrative Law Judge's action in this case.

**You May Send More Information**

You may send us more evidence or a statement about the facts and the law in this case.

Any more evidence must be new *and* material to the issues considered in the hearing decision dated July 14, 2016.

**We Will Not Act For 25 Days**

If you have more information, you must send it to us within 25 days of the date of this letter. We will not allow more time to send information except for very good reasons.

Our address and FAX number are:

**ADDRESS:**          Appeals Council
                      Office of Disability Adjudication and Review
                      ATTN:  Branch 10, Suite 1000
                      5107 Leesburg Pike
                      Falls Church, VA  22041-3255

**FAX:**              (703)605-7421, Attn: Branch 10

*Put your Social Security Number on your request.*

*If you send us anything by fax, please do not send duplicates by mail.  That may delay processing your claim.*

**What Happens Next**

If we do not hear from you within 25 days, we will assume that you do not want to send us

**16**

more information.  We will then proceed with our action based on the record we have.

**If You Have Any Questions**

If you have any questions, you may call or write the Appeals Council.  Our telephone number and address are shown at the top of this letter.  If you do call, please have this notice with you.


Dan Thao Dang
Legal Assistant

**17**

# Progress Notes

sleep study ordered.

Otherwise, I will assess the patient as scheduled or as
requested. He was discharged in stable condition.


DD: 03/08/17@15:19
DT: 03/08/17@18:45
AMERICA'S PRIDE/800528/JOB# 2005191




/es/ SAMIA BOULEGHLEM, M.D.
ATTENDING PHYSICIAN, PRIMARY CARE
Signed: 03/10/2017 10:47

LOCAL TITLE: CONSULTATION REPORT
STANDARD TITLE: CONSULT
DATE OF NOTE: MAR 02, 2017@09:01     ENTRY DATE: MAR 02, 2017@09:02:04
      AUTHOR: REDDY,RAJIDI M     EXP COSIGNER:
      URGENCY:                        STATUS: COMPLETED

CARDIOLOGY CONSULT:

DATE:3/2/2017

REQUESTING PHYSICION:Dr.Bouleglem.

REASON FOR CONSULT:Dyspnea on exertion.

H/o PRESENT ILLNESS:
FEDORCHAK,JOSEPH S This 50 year old gentleman, with known h/o chronic
hypertension stated that he has some dyspnea on moderate.heavy exertional
activities.He gets dyspnea especially when he walks up steep hills but able
to splitt wood and able to do other daily chores without any problems.He stated
he does not see any difference in his Dypnea compared to a year ago.He denied
any chest discomfort or palpitations or dizziness.He stated he doesnot believe
in meds.He prefers taking herbal meds.

PAST HISTORY:
1.H/o Chronic Hypertension which is not under control.
2.H/o Hyperlipidemia.
3.H/o Diabetes Mellites with Diabetic nephropathy.
4.H/o Chronic anemia.

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| FEDORCHAK,JOSEPH S<br>22 EDGE ROCK DRIVE<br>DRUMS, PENNSYLVANIA 18222 | Printed at wilkes-Barre |

# Progress Notes

FAMILY HISTORY:
Father died at the age 67 because of cardiovascular problems.
Mother still living but has hypertension.
One brother has hypertension.
One Sister has prediabetes.

SOCIAL HISTORY:
Pt denies any smoking.
He drinks socially.
He denies any illicit drugs.

MEDICATION:Reviewed in CPRS.

ALLERGIES:Amlodepine,Lisinopril,hctz,saxagliptin

REVIEW OF THE SYSTEMS:No significant symptoms pertaining to other systems.

PHYSICAL EXAMINATION:
Pt is comfortable.BP 198/96,PR 70/min,RR 18/min.
HEENT: Unremarkable.
NECK:  Soft,No JVD ,No cervical lymphadinopathy,thyroid is not palpable.
CHEST: Equal chest expansion with clear lung fields.
HEART: Regular rhythm with faint ejection systolic murmur of Gr1/6 best
       heard at aortic area without any diastolic murmur or gallop.
ABD:   Soft nontender without any organomegaly and normal femoral pulses.
EXTR:  No edema without any calf muscle tenderness with good pedal pulses.
CNS:   No focal findings.

LABS:  LDL 159,HDL 47,TG 152,Creat 1.5,K 5.4,Lfts normal.

EKG:   NSR with early uptake of St segment in v1,v2 with prominent twave
       in V2 unchanged.

CHESTXRAY(2013):Technique: PA and lateral chest radiograph was obtained.
       Comparison is made to prior 7/15/2010
       Findings: The lungs are clear. There is no pleural effusion. The
       heart and mediastinal contours are within normal limits. There is
       no pneumothorax. There is no pulmonary vascular congestion.
       Osteophytes are noted throughout included spine.

NUCLEAR STRESS TEST:He went for 10:30min and achieved heart rate of 133bpm
       and BP 215/11o.There was 1mm upslope st dipression.
       His nuclear scan reported no stress-induced ischemia.
       Normal left ventricle ejection fraction(52%) and wall motion study.

ECHOCARDIOGRAPHY:

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation
FEDORCHAK, JOSEPH S                                            | Printed at wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

# Progress Notes

LVH with Ef 55to60% with gr 1 diastolic dysfunction and
Mitral sclerosis with mild MR and trivial pericardial effusion.

IMPRESSION:
1.      H/o Dyspnea on moderate heavy exertional activities which is unchanged
        since one year.
        His LV function is normal.No valvular pathology noted.
        No evidence of ischemic heart disease.
        His BP response to exercize is exaggerated.
        Other causes need tobe investigated like COPD and obstructive
        sleep apnea.
2.      H/o Chronic Hypertension which is not under control.
3.      H/o Hyperlipidemia.
4.      H/o Diabetes Mellites with Diabetic nephropathy.
5.      H/o Chronic anemia.

RECOMMONDATIONS:
Patient is explained well about his present physical findings,
diagnosis,labs,EKGs and other cardiac work up.
Patient is councelled for proper cardiac diet,cessation of smoking and
abstaining from alcohal.
I also instructed him well risk factors for atherosclerosis and CAD and stroke
and advised to control risk factors  and moderate exercize like walking atleast
2miles/day or as tolerated.
I wanted to add norvasc for his uncontrolled BP,but he refused.
I advised him to check his BP closely and call his PCP in next 2to3days or
come to ER.
I also advised him to have Sleep study and Pfts which canbe done by his PCP.
I oredered chest xray today to r/o pulmonary pathology.
I didnot see any reason for him tobe followed in cardiology clinic.
I didnot give any return appointment.
I advised him to see his PCP for following BP and Lipid abnormalities.
He verbalized understanding well.

/es/ RAJIDI M REDDY, MD
STAFF CARDIOLOGIST, MEDICAL SERVICE
Signed: 03/02/2017 14:53

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| FEDORCHAK,JOSEPH S<br>22 EDGE ROCK DRIVE<br>DRUMS, PENNSYLVANIA  18222 | Printed at wilkes-Barre |

# Progress Notes

GENERAL: Denies weight change, fever, chills, night sweats.
EYE-EAR-NOSE-THROAT: Denies visual changes, diplopia, eye pain,
MUSCULO-SKELETAL: Denies backache, joint pain, stiffness, joint swelling,
RESPIRATORY: Denies cough, sputum, shortness of breath, wheezing, or asthma.
CARDIO-VASCULAR: Denies heart disease, HTN, chest pain, SOB.
GASTROINTESTINAL: Denies GERD, dsyphagia, nause & vomiting, melena.
GENITO-URINARY: Denies frequency, nocturia, dysuria, incontinence, polyuria.
NEUROLOGIC: Denies seizures, loc, paralysis, sensory change, or tremors.
PSYCHIATRIC: Denies any issues.

PHYSICAL EXAMINATION:
TEMPERATURE: 98.6 F [37.0 C] (01/25/2017 14:22)  PULSE: 75 (01/25/2017 14:22)
RESPIRATION:  20 (01/25/2017 14:22) BLOOD PRESSURE:  142/98 (01/25/2017 14:27)
PAIN: 0 (01/25/2017 14:22)

General- Patient in no apparent distress.
Head- Normocephalic, atraumatic.
Eyes- PERRLA, EOMI
ENT- Tympanic membranes intact. No discharge or fullness. No oropharyngeal
     congestion
CV- S1 S2 heard, no murmurs, rubs, or gallops, Aortic snap.
RS- Clear to auscultation bilaterally. No wheeze. No crackles.
GI- Soft, non-tender, non-distended. Bowel sounds present.
CNS- AAO x 3, No gross FND. CN 2-12 grossly intact.
Musculoskeletal- No peripheral edema. No cyanosis or clubbing.
Psych- No acute mood changes.

All labs from reviewed with patient.

Active Outpatient Medications (including Supplies):

| | Active Outpatient Medications | Status |
|---|---|---|
| 1) | ACCU-CHEK AVIVA PLUS TEST STRIP USE 1 STRIP TOPICALLY FOUR TIMES A DAY WITH LANCET FOR TESTING BLOOD SUGAR | ACTIVE |
| 2) | INSULIN ASPART 100 UNITS/ML FLEX PEN INJECT 4 UNITS SUBCUTANEOUSLY THREE TIMES A DAY WITH MEALS FOR DIABETES PLUS SLIDING SCALE | ACTIVE |
| 3) | INSULIN GLARGINE U-100 (100 UNITS/ML) INJECT 22 UNITS SUBCUTANEOUSLY EVERY DAY FOR DIABETES | ACTIVE |
| 4) | LOSARTAN 100MG TAB TAKE 50MG (ONE-HALF TABLET) BY MOUTH TWICE A DAY FOR BLOOD PRESSURE/HEART | ACTIVE |
| 5) | METFORMIN HCL 500MG TABLET TAKE ONE TABLET BY MOUTH TWICE A DAY WITH MEALS FOR DIABETES | ACTIVE |
| 6) | METOPROLOL TARTRATE 25MG TAB TAKE ONE TABLET BY MOUTH TWICE A DAY FOR BLOOD PRESSURE/HEART HOLD IF SYSTOLIC BLOOD PRESSURE LESS THAN 90 OR HEART LESS THAN 55 | ACTIVE |
| 7) | SYRINGE, INSULIN LO DOSE U-100 EACH USE 1 SYRINGE | ACTIVE |

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
FEDORCHAK,JOSEPH S
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

VISTA Electronic Medical Documentation
Printed at Wilkes-Barre

Page 16

# Progress Notes

Printed On Apr 10, 2017

LOCAL TITLE: MED PRIMARY CARE NOTE
STANDARD TITLE: PRIMARY CARE NOTE
DATE OF NOTE: MAR 08, 2017@15:19     ENTRY DATE: MAR 08, 2017@20:41:34
     AUTHOR: BOULEGHLEM,SAMIA       EXP COSIGNER:
     URGENCY:                            STATUS: COMPLETED

REASON FOR VISIT: Followup after cardiac visit.

HISTORY OF PRESENT ILLNESS:  The patient is a 50-year-old
veteran seen on January 25.  At that time he was complaining of
dyspnea on exertion.  The patient is diabetic and very much not
controlled.  His A1c back in January was 12.8.  The patient
underwent stress test, 2/D echo, was seen by Cardiology on March
2 with no significant recommendations.  The patient stated that
Dr. Reddy told him to stop the aspirin but after reviewing the
note there was nothing about that.  The patient is currently on
losartan, metoprolol and aspirin, did not want to be on any
statins.  Denies fever, chills, night sweats, chest pain,
shortness of breath at rest, PND, orthopnea, dizziness,
palpitations, denies abdominal pain, nausea, vomiting, diarrhea.
The rest of the review of systems was benign.  He denies
worsening of his depression.  Denies suicidal or homicidal
ideation.  Aware about the crisis hotline.

ALLERGIES:  Please see CPRS.

MEDICATIONS:  Reviewed, no change.

PHYSICAL EXAMINATION:  General appearance:  A middle-aged white
male awake, alert and oriented x3 in no acute distress.  Vital
signs noted.  Heart: Regular, S1 and S2, no murmur.  Lungs:
Clear to auscultation.  Abdomen:  Soft, non-tender.
Extremities:  No edema.

Labs and imaging reviewed.

ASSESSMENT AND PLAN:

1.  Dyspnea on exertion, cleared apparently by Cardiology.  The
patient is aware in case he develops any chest pain, shortness
of breath or otherwise feels sick to seek immediate medical help
by calling 911 or going to the nearest Emergency Room.

2.  Diabetes mellitus. A1c improved from ~13 to 10.7.  The patient did
not elaborate too much on the Accu-Cheks.  He is currently on
insulin, Lantus, NovoLog and metformin.  He is also on losartan.
Has an appointment coming up with the diabetic nurse.

3.  Concerns about sleep apnea and breathing issues.  PFTs and

PATIENT NAME AND ADDRESS (Mechanical Imprinting, If available) | VISTA Electronic Medical Documentation
FEDORCHAK,JOSEPH S                                             | Printed at Wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

# Radiology Reports

CHEST 2 VIEWS PA&LAT

Exm Date: MAR 02, 2017@14:39
Req Phys: REDDY,RAJIDI M                    Pat Loc: WBP CARDIO REDDY (Req'g Loc)
                                            Img Loc: X-RAY MAIN (XRAY)
                                            Service: Unknown


(Case 892 COMPLETE)  CHEST 2 VIEWS PA&LAT            (RAD  Detailed) CPT:71020
     Reason for Study: R/o parenchymal abnormalities

     Clinical History:
       H/o dyspnea

     Report Status: Verified              Date Reported: MAR 02, 2017
                                          Date Verified: MAR 02, 2017
     Verifier E-Sig:

     Report:
       CHEST X-RAY 2 VIEW

       INDICATION: Rule out parenchymal abnormalities

       TECHNIQUE:  PA and lateral views of the chest were obtained.

       COMPARISON: Chest x-ray 10/3/2013, 7/26/2013

       FINDINGS:  Cardiomediastinal silhouette is normal.  The lungs are
       without focal consolidation.  There is no evidence of
       pneumothorax.   There is no evidence of pleural effusion.  The
       pulmonary vasculature is within normal limits.  Multilevel
       thoracic spondylosis remains unchanged.


       Impression:
         No acute cardiopulmonary disease. No significant interval
         change.

         Gautam Thakur
         3/2/2017 2:50 PM

       Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
   GAUTAM THAKUR, Staff Physician
             (Verifier, no e-sig)
  /GT

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation
FEDORCHAK,JOSEPH S                                             | Printed at Wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

# Radiology Reports

Printed On Apr 10, 2017

```
             Christopher Chapman
             2/27/2017 2:38 PM

        Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
   CHRISTOPHER N CHAPMAN, Staff Physician
           (Verifier, no e-sig)
/CNC



ECHOGRAM PELVIC B-SCAN &/OR REAL TIME W/IMAGING

Proc Ord: ECHOGRAM RETROPERITONEAL COMPLETE
Exm Date: FEB 16, 2017@13:31
Req Phys: BOULEGHLEM,SAMIA        Pat Loc: WBP PACT TEAM 11 (Req'g Loc)
                                  Img Loc: USS
                                  Service: Unknown



(Case 863 COMPLETE)  ECHOGRAM PELVIC B-SCAN &/OR REAL (US    Detailed) CPT:76856
        Reason for Study: Pt c/o nonspecific  SX

(Case 864 COMPLETE)  ECHOGRAM RETROPERITONEAL LIMITED (US    Detailed) CPT:76775

     Clinical History:
       Please do pre & post void

     Report Status: Verified          Date Reported: FEB 16, 2017
                                      Date Verified: FEB 16, 2017
     Verifier E-Sig:

     Report:
       Clinical information: Pre and post void. Diabetic patient.
       History of hypertension and frequency.

       Comparison: 4-14-16 ultrasound.

       RENAL ULTRASOUND

       Both kidneys are normal in cortical thickness and echogenicity,
       the borderline enlarged, the right measuring  13.9 cm and the
       left  14.6 cm. No evidence for hydronephrosis, renal contour
       deforming mass nor calculi.


       TRANSABDOMINAL PELVIC ULTRASOUND
```

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)   ViSTA Electronic Medical Documentation
FEDORCHAK,JOSEPH S                                               Printed at Wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

24 Page 6

# Radiology Reports

The urinary bladder is without wall thickening or sediment.
Bilateral ureteral jets are demonstrated. Pre-void bladder volume
measures  514 cc and postvoid volume is  16 cc. Prostate gland
measures 30cc.


Impression:


1. Unremarkable renal ultrasound. No hydronephrosis.  2. No
significant post void urinary bladder residual, 16 cc.

Gisele Lafond
2/16/2017 4:26 PM

Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
  GISELE M LAFOND, RADIOLOGY CONSULTANT DIAGNOSTIC SVC
        (Verifier, no e-sig)
/GML

---

ECHOGRAM RETROPERITONEAL LIMITED

Proc Ord: ECHOGRAM RETROPERITONEAL COMPLETE
Exm Date: FEB 16, 2017@13:31
Req Phys: BOULEGHLEM,SAMIA                Pat Loc: WBP PACT TEAM 11 (Req'g Loc)
                                          Img Loc: USS
                                          Service: Unknown



(Case 863 COMPLETE)  ECHOGRAM PELVIC B-SCAN &/OR REAL (US    Detailed) CPT:76856
     Reason for Study: Pt c/o nonspecific  SX

(Case 864 COMPLETE)  ECHOGRAM RETROPERITONEAL LIMITED (US    Detailed) CPT:76775

   Clinical History:
     Please do pre & post void

   Report Status: Verified              Date Reported: FEB 16, 2017
                                        Date Verified: FEB 16, 2017

   Verifier E-Sig:

   Report:

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)  |  VISTA Electronic Medical Documentation
FEDORCHAK,JOSEPH S                                               |  Printed at wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

# Radiology Reports

Clinical information: Pre and post void. Diabetic patient.
History of hypertension and frequency.

Comparison: 4-14-16 ultrasound.

RENAL ULTRASOUND

Both kidneys are normal in cortical thickness and echogenicity,
the borderline enlarged, the right measuring  13.9 cm and the
left  14.6 cm. No evidence for hydronephrosis, renal contour
deforming mass nor calculi.

TRANSABDOMINAL PELVIC ULTRASOUND

The urinary bladder is without wall thickening or sediment.
Bilateral ureteral jets are demonstrated. Pre-void bladder volume
measures  514 cc and postvoid volume is  16 cc. Prostate gland
measures 30cc.

Impression:

   1. Unremarkable renal ultrasound. No hydronephrosis.  2. No
   significant post void urinary bladder residual, 16 cc.

   Gisele Lafond
   2/16/2017 4:26 PM

   Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
   GISELE M LAFOND, RADIOLOGY CONSULTANT DIAGNOSTIC SVC
        (Verifier, no e-sig)
/GML

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
FEDORCHAK,JOSEPH S
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

VISTA Electronic Medical Documentation
Printed at wilkes-Barre

# Radiology Reports

(Case 151 COMPLETE)  MYOCARDIAL PERFUSION SPECT W/EF & (NM   Detailed) CPT:78452
    Reason for Study: DOE

(Case 152 COMPLETE)  ADMINISTRATION SESTAMIBI UP TO 30 (NM   Detailed) CPT:A9500

(Case 153 COMPLETE)  ADMINISTRATION SESTAMIBI 10 MCI P (NM   Detailed) CPT:A9500

Clinical History:
    Pt has uncontrolled DM.

Report Status: Verified                 Date Reported: FEB 27, 2017
                                        Date Verified: FEB 27, 2017

Verifier E-Sig:

Report:
    Study: Gated SPECT perfusion.

    Comparison: July 20, 2010.

    History: Dyspnea on exertion.

    Patient exercised according to the Bruce protocol for 10.36
    minutes achieving a work level maximum of 11.7 METs. The resting
    heart rate of 65 bpm rose to a maximum heart rate of 133 bpm.
    This value represents 78% of the maximum age-predicted heart
    rate. The resting blood pressure of 215/111 mmHg rose to a
    maximum blood pressure 250/112 mmHg.  9.6 mCi and 29.0 mCi
    technetium 99m and sestamibi was injected intravenously into the
    left antecubital fossa for rest and stress imaging, respectively.

    Post stress images demonstrate a normal sized left ventricle
    cavity. No discrete photopenic defects seen.

    Post rest images demonstrate no interval change, remaining
    normal.

    4D Polar map analysis demonstrates no areas delayed washout.

    Gated SPECT cine analysis demonstrates unremarkable wall motion
    with calculated left ventricle ejection fraction: 52%.


Impression:
    No stress-induced ischemia. Normal left ventricle ejection
    fraction and wall motion study.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)  | VISTA Electronic Medical Documentation
FEDORCHAK, JOSEPH S                                              | Printed at Wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

# Radiology Reports

Gated SPECT cine analysis demonstrates unremarkable wall motion
with calculated left ventricle ejection fraction: 52%.


Impression:
No stress-induced ischemia. Normal left ventricle ejection
fraction and wall motion study.

Christopher Chapman
2/27/2017 2:38 PM

Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
CHRISTOPHER N CHAPMAN, Staff Physician
(Verifier, no e-sig)
/CNC


ADMINISTRATION SESTAMIBI UP TO 30 MCI PER DOSE

Proc Ord: NUCLEAR REGADENOSON STRESS TEST
Exm Date: FEB 27, 2017@10:55
Req Phys: BOULEGHLEM,SAMIA          Pat Loc: WBP PACT TEAM 11 (Req'g Loc)
                                    Img Loc: NMS
                                    Service: Unknown


(Case 151 COMPLETE)  MYOCARDIAL PERFUSION SPECT W/EF &(NM    Detailed) CPT:78452
     Reason for Study: DOE

(Case 152 COMPLETE)  ADMINISTRATION SESTAMIBI UP TO 30(NM    Detailed) CPT:A9500

(Case 153 COMPLETE)  ADMINISTRATION SESTAMIBI 10 MCI P(NM    Detailed) CPT:A9500


Clinical History:
Pt has uncontrolled DM.

Report Status: Verified          Date Reported: FEB 27, 2017
                                 Date Verified: FEB 27, 2017
Verifier E-Sig:

Report:
Study: Gated SPECT perfusion.

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
FEDORCHAK,JOSEPH S
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

VISTA Electronic Medical Documentation
Printed at Wilkes-Barre

APR 10, 2017 (15:50)    Cumulative Vitals/Measurements Report        Page 1

----------------------------------------------------------------------------

```
03/21/17
14:52
     Wt: 181.20 lb (82.36 kg) (ACTUAL)
     Body Mass Index: 25
14:43
     B/P: 146/90* (R ARM, SITTING, CUFF-MANUAL, LG ADULT CUFF)
14:43
     B/P: 148/85* (R ARM, SITTING, CUFF-AUTOMATED, LG ADULT CUFF)
14:43
     T:   98.0 F (36.7 C)
     P:   77
     R:   18
     B/P: 150/88*
     Ht:  72.00 in (182.88 cm) (STATED)
(E) Wt:  176.90 lb (80.41 kg) (ACTUAL)
     Pulse Oximetry: 98%
     Pain: 0 - No pain
03/08/17
13:20
     T:   98.2 F (36.8 C)
     P:   68
     R:   20
     B/P: 139/88 (L ARM, SITTING, CUFF-AUTOMATED, LG ADULT CUFF)
     Ht:  72.00 in (182.88 cm) (ACTUAL)
     Wt:  188.00 lb (85.45 kg) (ACTUAL)
     Body Mass Index: 26
     Pulse Oximetry: 98%
          via ROOM AIR
     Pain: 0 - No pain
03/02/17
13:41
     B/P: 198/96* (R ARM, SITTING, ADULT CUFF, CUFF-MANUAL)
13:40
     T:   97.8 F (36.6 C)
     P:   70
     R:   16
     B/P: 199/101* (L ARM, SITTING, ADULT CUFF, CUFF-AUTOMATED)
     Ht:  72.00 in (182.88 cm) (STATED)
     Wt:  188.10 lb (85.50 kg) (ACTUAL)
     Body Mass Index: 26
     Pulse Oximetry: 98%
     Pain: 0 - No pain
01/25/17
14:27
     B/P: 142/98* (R ARM, SITTING, CUFF-AUTOMATED, LG ADULT CUFF)
14:22
     T:   98.6 F (37.0 C)
     P:   75
     R:   20
     B/P: 140/98* (L ARM, SITTING, CUFF-MANUAL, LG ADULT CUFF)
     Ht:  71.00 in (180.34 cm) (ACTUAL)
     Pulse Oximetry: 99%
          via ROOM AIR
     Pain: 0 - No pain
01/09/17

*** (E) - Error entry
```

FEDORCHAK,JOSEP   7882          OCT 1,1966   50 YRS  MALE        VAF 10-7987j
Unit:                          Room:
Division:

**29**

# Radiology Reports

Printed On Apr 10, 2017

MYOCARDIAL PERFUSION SPECT W/EF & WALL MOTION

Proc Ord: NUCLEAR REGADENOSON STRESS TEST
Exm Date: FEB 27, 2017@10:55
Req Phys: BOULEGHLEM,SAMIA

Pat Loc: WBP PACT TEAM 11 (Req'g Loc)
Img Loc: NMS
Service: Unknown

(Case 151 COMPLETE)  MYOCARDIAL PERFUSION SPECT W/EF &(NM    Detailed) CPT:78452
         Reason for Study: DOE

(Case 152 COMPLETE)  ADMINISTRATION SESTAMIBI UP TO 30(NM    Detailed) CPT:A9500

(Case 153 COMPLETE)  ADMINISTRATION SESTAMIBI 10 MCI P(NM    Detailed) CPT:A9500

    Clinical History:
        Pt has uncontrolled DM.

    Report Status: Verified

Date Reported: FEB 27, 2017
Date Verified: FEB 27, 2017

    Verifier E-Sig:

    Report:
        Study: Gated SPECT perfusion.

        Comparison: July 20, 2010.

        History: Dyspnea on exertion.

        Patient exercised according to the Bruce protocol for 10.36
        minutes achieving a work level maximum of 11.7 METs. The resting
        heart rate of 65 bpm rose to a maximum heart rate of 133 bpm.
        This value represents 78% of the maximum age-predicted heart
        rate. The resting blood pressure of 215/111 mmHg rose to a
        maximum blood pressure 250/112 mmHg.  9.6 mCi and 29.0 mCi
        technetium 99m and sestamibi was injected intravenously into the
        left antecubital fossa for rest and stress imaging, respectively.

        Post stress images demonstrate a normal sized left ventricle
        cavity. No discrete photopenic defects seen.

        Post rest images demonstrate no interval change, remaining
        normal.

        4D Polar map analysis demonstrates no areas delayed washout.

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
FEDORCHAK,JOSEPH S
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222

VISTA Electronic Medical Documentation
Printed at Wilkes-Barre

30 Page 2

# Radiology Reports

Comparison: July 20, 2010.

History: Dyspnea on exertion.

Patient exercised according to the Bruce protocol for 10.36 minutes achieving a work level maximum of 11.7 METs. The resting heart rate of 65 bpm rose to a maximum heart rate of 133 bpm. This value represents 78% of the maximum age-predicted heart rate. The resting blood pressure of 215/111 mmHg rose to a maximum blood pressure 250/112 mmHg. 9.6 mCi and 29.0 mCi technetium 99m and sestamibi was injected intravenously into the left antecubital fossa for rest and stress imaging, respectively.

Post stress images demonstrate a normal sized left ventricle cavity. No discrete photopenic defects seen.

Post rest images demonstrate no interval change, remaining normal.

4D Polar map analysis demonstrates no areas delayed washout.

Gated SPECT cine analysis demonstrates unremarkable wall motion with calculated left ventricle ejection fraction: 52%.


Impression:
   No stress-induced ischemia. Normal left ventricle ejection
   fraction and wall motion study.

   Christopher Chapman
      2/27/2017 2:38 PM

   Primary Diagnostic Code: NO ALERT REQUIRED

Primary Interpreting Staff:
   CHRISTOPHER N CHAPMAN, Staff Physician
            (Verifier, no e-sig)
/CNC

---

ADMINISTRATION SESTAMIBI 10 MCI PER DOSE

Proc Ord: NUCLEAR REGADENOSON STRESS TEST
Exm Date: FEB 27, 2017@10:55
Req Phys: BOULEGHLEM,SAMIA                Pat Loc: WBP PACT TEAM 11 (Req'g Loc)
                                          Img Loc: NMS
                                          Service: Unknown

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation
FEDORCHAK,JOSEPH S                                             | Printed at Wilkes-Barre
22 EDGE ROCK DRIVE
DRUMS, PENNSYLVANIA  18222



**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
Social Security Administration
Stegmaier Bldg., Suite 201
7 N. Wilkes Barre Blvd.
Wilkes Barre, PA 18702
Tel: 1-866-895-1594/Fax: 570-821-4169

Date: July 19, 2016

Joseph Stanley Fedorchak
22 Edge Rock Drive
Drums, PA 18222

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

> **Appeals Council**
> **Office of Disability Adjudication and Review**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**32**

See Next Page

filing it on time.

## What Else You May Send Us

You may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## Your Right To Representation In An Appeal

If you appeal, you may choose to have an attorney or other person help you. Many representatives do not charge a fee unless you win your appeal. Groups are available to help you find a representative or, if you qualify, to give you free legal services. Your local Social Security office has a list of groups that can help you in this process.

If you get someone to help you with your appeal, you or that person must let the Appeals Council know. If you hire someone, we must approve the fee before he or she is allowed to collect it.

Form HA-L76-OP2 (03-2010)    **33**

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (866)388-9878.  Its address is:

> Social Security
> 88 South Laurel Street
> Hazleton, PA 18201-9965


> Richard Zack
> Administrative Law Judge


Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

<u>**IN THE CASE OF**</u>

<u>**CLAIM FOR**</u>

Period of Disability and Disability Insurance
Benefits

Joseph Stanley Fedorchak

(Claimant)

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

(Wage Earner)

(Social Security Number)

<u>**JURISDICTION AND PROCEDURAL HISTORY**</u>

On February 10, 2014, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 3, 2013. The claim was denied initially on June 16, 2014. Thereafter, the claimant filed a written request for hearing on July 10, 2014 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on April 20, 2016, in Wilkes Barre, Pennsylvania. Carmine Abraham, an impartial vocational expert, also appeared at the hearing. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

<u>**ISSUES**</u>

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2017. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from October 3, 2013, through the date of this decision.

<u>**APPLICABLE LAW**</u>

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

**35**

disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the
claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to
the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial
gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work
activity that is both substantial and gainful.  "Substantial work activity" is work activity that
involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work
activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR
404.1572(b)).  Generally, if an individual has earnings from employment or self-employment
above a specific level set out in the regulations, it is presumed that he has demonstrated the
ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, he
is not disabled regardless of how severe his physical or mental impairments are and regardless of
his age, education, and work experience.  If the individual is not engaging in SGA, the analysis
proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable
impairment that is "severe" or a combination of impairments that is "severe" (20 CFR
404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of
the regulations if it significantly limits an individual's ability to perform basic work activities.
An impairment or combination of impairments is "not severe" when medical and other evidence
establish only a slight abnormality or a combination of slight abnormalities that would have no
more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security
Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically
determinable impairment or combination of impairments, he is not disabled.  If the claimant has
a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination
of impairments is of a severity to meet or medically equal the criteria of an impairment listed in
20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the
claimant's impairment or combination of impairments is of a severity to meet or medically equal
the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is
disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first
determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's
residual functional capacity is his ability to do physical and mental work activities on a sustained
basis despite limitations from his impairments.  In making this finding, the undersigned must
consider all of the claimant's impairments, including impairments that are not severe (20 CFR
404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual
functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)).
The term past relevant work means work performed (either as the claimant actually performed it
or as it is generally performed in the national economy) within the last 15 years or 15 years prior
to the date that disability must be established.  In addition, the work must have lasted long

**36**

enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.**

**2.    The claimant has not engaged in substantial gainful activity since October 3, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).**

**3.    The claimant has the following severe impairments: hypertension, diabetes mellitus, bladder problems, unspecified psychotic disorder, paranoid personality disorder, bipolar disorder, and depressive disorder (20 CFR 404.1520(c)).**

These impairments have more than a minimal impact on the claimant's ability to perform some work-related activities and therefore, they are severe. However, despite their severity, these impairments are not completely disabling.

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The claimant did not have horizontal, down sloping, or up sloping depression of the ST segment or junction as described in the listing, impaired myocardial function, or coronary artery disease described in listing 4.04.

The claimant has an impairment of renal function under listing 6.02, but does not have chronic hemodialysis or peritoneal dialysis necessitated by irreversible renal failure or has had, or is being considered for a kidney transplant. The claimant's serum creatinine level is not

persistently elevated to 4 mg. per deciliter or greater nor does the claimant suffer a reduction of creatinine clearance to 20 ml per minute or less over at least three months. The claimant does not have renal osteodystrophy, pericarditis, intractable pruritus, persistent fluid overload syndrome, persistent anorexia, persistent hematocritis of 30 percent or less.

The claimant's diabetes mellitus is evaluated under newly revised 9.00 Endocrine Disorders (SSR-14-2p). The undersigned notes diabetes mellitus type 1 and type 2 are chronic disorders that can have serious disabling complications that can meet the durational requirement. Further, type 2 diabetes mellitus generally requires lifestyles changes, such as medication, increased exercise, and dietary modification. While both types of diabetes mellitus are usually controlled, some persons do not achieve good control for a variety of reasons, including but not limited to hypoglycemia unawareness, other disorders that can affect blood glucose levels, inability to manage diabetes mellitus due to a mental disorder, or inadequate treatment. Further, diabetes mellitus and unstable blood glucose levels can produce acute or long-term complication, which can have many different effects in other body systems. The 9.00 Endocrine Disorder indicates these complications would be evaluated under the affected body systems. The undersigned notes, however, the record as a whole fails to reveal any evidence of diabetic complications.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant is able to care for his personal needs, prepare simple meals, do outdoor and indoor chores, do car and truck repairs, drive, and shop. Things may take longer according to the claimant (Exhibit 3E and Testimony).

In social functioning, the claimant has moderate difficulties. The claimant reported no difficulty getting along with others, but he has some paranoid tendencies and was diagnosed with paranoid personality disorder which is likely to interfere with his ability to be socially appropriate at times (Exhibits 3E and 1F-8F).

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has mental impairments which by their nature are likely to interfere with an individual's ability to concentrate. His mental health records indicated some religious preoccupation (Exhibits 2F-8F).

As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. The claimant was hospitalized on one occasion since his alleged onset date which was after the date of this hearing (Exhibit 10F).

**38**

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The claimant does not have a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:  repeated episodes of decompensation, each of extended duration, a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, and scaffolding.  The claimant cannot climb up considerable inclines as part of his job duties.  He cannot be exposed to hazards such as dangerous unprotected heights and dangerous unprotected machinery.  The claimant cannot be exposed to excessive vibrations.  He cannot work in a harsh environment involving exposure to temperature extremes, high humidity, dusts, fumes, and gases.  The claimant can have occasional interaction with supervisors, co-workers, and the public.  He can reach in front of him, laterally, and side-to-side.  The claimant is able to use his hands to handle, finger, and feel objects.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

The claimant was treated at the Veterans' Administration Medical Center (VAMC) emergency room on October 3, 2013 for complaints of bilateral lower ribcage pain posteriorly for the last four weeks, left greater than right.  He reported it occurred intermittently lasting for a few seconds up to one or two minutes particularly in certain positions.  The claimant reported that

**39**

when he lifted some object he got the pain in a certain position or movement. There was no specific relation with exertion. A physical examination revealed his blood pressure was 196/94, but the examination was otherwise within normal limits. He had no costovertebral tenderness and he had no neurological deficits. The doctor diagnosed him with bilateral lower ribcage pain, but no specific clinical acute abnormality. He had significant relief with Toradol (Exhibit 2F, pages 264-269).

In November 2013, Catherin Aulenbach, a certified registered nurse practitioner (CRNP), examined the claimant. He reported he felt OK, but his blood sugars were elevated although he was not using Novolog for sliding scale as directed and he was not monitoring his diet or checking his sugars. She noted his blood pressure was elevated, but the claimant insisted he has "white coat syndrome" and his blood pressure is good at home and if he goes out to the parking lot, it would be nicely controlled. Mr. Fedorchak reported he followed a vegan diet and he eats gluten-free grains. He denied any formal exercise, but he has a wood stove that requires carrying wood in, out, up, and down frequently. His last eye examination was in October 2013 and he has diabetic retinopathy. The claimant denied having any dizziness, abdominal pain, and numbness and tingling in his hands or feet. He denied increased thirst, urination, or hunger. The claimant denied headache, shortness of breath, lightheadedness, blurred vision, or chest pain (Exhibit 2F, pages 232-239).

In March 2014, the claimant stated he was feeling OK, but he reported his blood sugars were elevated although he was not using Novolog or monitoring his diet. His blood pressure remained elevated. The claimant continued to justify why he uses over-the-counter supplements for his diabetes, blood pressure, etc. He admitted he has to get back to see his spiritual advisor who helps "heal." A physical examination was unremarkable. Ms. Aulenbach recommended the claimant be treated in the nephrology department. She noted his noncompliance issues were a huge barrier to the management of his diabetes protocol (Exhibit 2F, pages 211-226).

Dr. Jay Willner consultatively examined the claimant on May 29, 2014. The claimant complained of hypertension, shortness of breath, and diabetes mellitus. His medications were listed as Lantus, Novolog, Glimepiride, Metformin, Metoprolol, Losartan, and Amoxicillin (to treat a dental abscess). He reported he lived alone, performed all of his activities of daily living, watches TV, listens to the radio, reads, and attends family events. A physical examination revealed his blood pressure was 160/100. His vision was 20/20 with glasses. Mr. Fedorchak did not appear to be in any distress. The claimant's gait was normal and he could walk on his heels and toes without difficulty. He had 5/5 motor power in all of his extremities, he had no joint abnormalities, and he had no edema. His grip strength was 5/5 bilaterally. The claimant tended to be very talkative with flight of thought. Dr. Willner diagnosed the claimant with hypertension, shortness of breath, and diabetes mellitus. He stated the claimant was capable of heavy exertional work (Exhibit 1F).

Jaime McAndrew, RN, MS, met with the claimant at his home in November 2014 and December 2014. She noted the claimant was doing well. His mood was stable, he denied suicidal and homicidal ideations, and he denied auditory or visual hallucinations. He reported he was traveling to his timeshare vacation home with his mother. When he returned from his vacation,

**40**

he reported that he had a good vacation and he was able to visit with family from out-of-town (Exhibit 4F, pages 143-144).

Ms. Aulenbach examined the claimant in December 2014.  Mr. Fedorchak reported he felt pretty good.  He stated he returned from vacation and he ran out of his blood pressure medication, but he continued to take his diabetic medications and he thought his blood sugars were improving.  The claimant admitted he was not taking Novolog because he is one hundred percent convinced it causes weight gain.  He was seeing his spiritual advisor for spiritual healing, but the priest did not prescribe any sort of medication or herbal remedies.  The claimant continued to take herbal remedies on his own to treat his medical condition.  He was busy with his activities of daily living.  A physical examination was unremarkable.  Ms. Aulenbach noted the claimant was being treated at the nephrology clinic (Exhibit 4F, pages 133-138).

Dr. Dipak Mallik, a nephrologist, examined the claimant on December 5, 2014.  The claimant reported feeling OK and he denied chest pain, shortness of breath, headache, and dizziness.  He awoke during the night to urinate once or twice.  His blood pressure was 175/105.  Dr. Mallik noted the claimant alleged he was allergic to all diuretics, ACE inhibitors, and calcium channel blockers.  He noted the claimant had no reaction to Losartan and he also taking Metoprolol.  The claimant stated that when he took his blood pressure at home it measured 150/88 (Exhibit 4F, pages 131-132).

Dr. F. Mansuri, a primary care physician at the VAMC, examined the claimant on January 2, 2015.  A physical examination was within normal limits except his blood pressure was elevated and he refused adjustment of the dosage of his medication or additional medication (Exhibit 4F, pages 122-125).  He saw an ophthalmologist in January 2015.  His vision was stable (Exhibit 4F, pages 117-118).

Mr. Fedorchak told Dr. David Yatsonsky during the a telephone encounter on February 18, 2015 that he had dyspnea on exertion or with hills for the last two years and did not make his doctor aware.  He stated it had improved slightly over the past six months with blood pressure improvement and he had no shortness of breath or chest pain walking on the level or at rest.  Dr. Yatsonsky told the claimant to see his primary care physician that very day (Exhibit 4F, page 89).

The claimant returned Dr. Mansuri on March 10, 2015 and complained of a laceration on his left wrist since the prior day when he was splitting wood.  Dr. Mansuri noted the claimant had uncontrolled hypertension and diabetes mellitus, but he was very noncompliant with medications.  The claimant denied any chest pain, shortness of breath, palpitations, abdominal pain, nausea, or other symptoms.  A physical examination revealed his blood pressure was 170/104.  Dr. Mansuri diagnosed the claimant with a superficial laceration of the left wrist, uncontrolled hypertension, and uncontrolled diabetes mellitus (Exhibit 4F, pages 83-84).

The claimant reported feeling pretty good in May 2015 when he returned to Ms. Aulenbach.  He was still not compliant with all his medications and he was not watching his carbohydrates as closely as he should.  He was stable (Exhibit 71-76).  Dr. Mallik examined the claimant on June 2, 2015.  The claimant stated he felt fine and he denied any pain, shortness of breath, headache,

**41**

or dizziness.  His blood pressure was 191/109.  The claimant stated he checked his blood
pressure at Walgreens and it was below 150 and 90 (Exhibit 4F, pages 65-66).

Mr. Fedorchak was hospitalized from April 16, 2016 to May 10, 2016 after police brought him to
the local emergency room.  The claimant thought he was being harassed by his neighbors and he
had a rifle which he took to the mailbox.  He reported he had to protect his property.  The
claimant denied having any mental illness and his priest could prove it.  He reported demons in
his house and a priest came to his house for exorcisms.  The claimant denied auditory or visual
hallucinations and he denied paranoia.  He complained of side effects from medications or
refused medication.  Mr. Fedorchak admitted he would not be compliant with medications on
discharge from the hospital.  The claimant knew his blood sugars ran high, but he wanted to eat
what he wanted.  A mental status examination on discharge the claimant denied suicidal and
homicidal ideations with paranoia and fixed delusions.  His insight and judgment were fair.  The
claimant's affect was restricted.  He was less paranoid on discharge.  Dr. Craig Richman
diagnosed the claimant with unspecified psychotic disorder, paranoid personality disorder, and
hypertension, diabetes, and bladder issues and he rated his disability as mild (Exhibit 10F).

In considering the claimant's symptoms, the undersigned must follow a two-step process in
which it must first be determined whether there is an underlying medically determinable physical
or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable
clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the
claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected
to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate
the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent
to which they limit the claimant's functioning. For this purpose, whenever statements about the
intensity, persistence, or functionally limiting effects of pain or other symptoms are not
substantiated by objective medical evidence, the undersigned must consider other evidence in the
record to determine if the claimant's symptoms limit the ability to do work-related activities.

Mr. Fedorchak testified he receives all his medical care through the VAMC and how often he
goes varies.  He stated he is treated for diabetes, high blood pressure, his kidneys, and he might
have something wrong with his bladder.  The claimant stated he had an accident last year.  He
testified he also self-treats and participates in spiritual healing through a priest with the Catholic
Church and he saw an exorcist through the Catholic Church.  The claimant testified he takes
herbal supplements along with prescribed medication.  He stated he had problems with all of the
different classes of medications to try to lower his blood pressure and the two medications he is
on now help some, but his blood pressure is still high.  Mr. Fedorchak explained about he had
difficulty getting a tooth pulled due to his excessively high blood pressure and what his bladder,
kidney, and eye problems are due to the high blood pressure and diabetes.

The claimant testified he gets breathing problems with walking up a slight incline or hill.  He
testified that he got winded when he was on vacation in Texas and he had breathing problems on
an incline.  The claimant stated he has edema and building up of fluids.  He explained about the
difficulty he had with high blood pressure medications and a water pill.  Mr. Fedorchak testified

**42**

about moving wood on his property.  The claimant testified that it now takes him much longer to do things and everyday things that took him a week to do now take him a month or two to do.

He stated he has to split wood for his wood burner and it bothers his arms and he gets pain in his sides and pain in his stomach.  Mr. Fedorchak stated he spends his day on the computer and he cleans when he feels good.  The claimant testified basically he goes out with his mother.  He testified he is limited in what he can do and in 2010 he had some things affecting him because of the diabetes and his stomach.  The claimant stated he had pain in his sides and it could be problems with his kidneys.  He stated it could be Celiac's disease because dairy bothers him.

Mr. Fedorchak testified he liked working on his vehicle, but he is limited on what he can do.  The claimant testified he does exercise on a lounge chair and he does a toning thing like a skier.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant has hypertension, diabetes, and possible bladder or kidney problems.  He does not endorse the use of prescribed medications for any of his physical or mental conditions and treatment records are replete with notations of "non-compliance."  Instead, he relies in a very serious manner on "spiritual healing" and holistic herbal supplements.  At this point in time, the claimant has only mild complications from his diabetes and hypertension (Exhibit 5F, pages 89, 98, 99, 100, 101, 102, and 106).  The objective physical examinations showed he had 5/5 muscle strength in all extremities, normal reflexes and handgrip, and 20/40 or better corrected vision.  He is very active splitting wood, working on his vehicle, exercising, using his computer, and taking his mom places.  The claimant did not report any of his symptoms to his primary care physician or any of his other doctors except for a one-time telephone encounter with Dr. Yatsonsky in February 2015 (Exhibit 4F, page 89).  He failed to mention any complaints at his next medical examination and he specifically denied those very same symptoms repeatedly.  The claimant appeared as a youthful and healthy 49 year old.

From a psychiatric standpoint, the claimant has a history of unspecified psychotic disorder, paranoid personality disorder, bipolar disorder and depressive disorder.  Treatment records indicate (at least prior to the hearing) that he was functioning well from a psychiatric standpoint (Exhibits 4F and 8F).  Less than a week after the hearing, the claimant had a psychotic episode which made the TV and newspapers.  He was hospitalized at the Meadows Psychiatric Center from April 26, 2016  to May 10, 2016 (Exhibit 10F).  The important element is that at the time of discharge his attending specialists opined that his disability level was "mild" and that there were no restrictions on his physical activities (Exhibit 10F, pages 8 and 9).  The claimant never received any mental health treatment prior to April 2016 since his hospitalization in 2010.

As for the opinion evidence, the undersigned gives significant weight to the State Agency (DDS) opinion and the consultative examiner's opinion (Exhibits 1A and 1F).  While the undersigned

**43**

gave the claimant additional limitations based on the objective medical evidence, they confirm at a residual functional capacity for light work based on the findings in the record.

The undersigned gives great weight to the opinions of the attending specialists at the Meadows Psychiatric Center who rated his disability as mild (Exhibit 10F). They are specialists and the claimant responded to the treatment and was stable on discharge.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence of record.

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as an electrician maintenance worker. His past relevant work was medium exertional work. Accordingly, the claimant is unable to perform past relevant work.

**7.    The claimant was born on October 1, 1966 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the

**44**

claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as n order filler (DOT #222.487-014) (10,000 jobs in the Commonwealth of Pennsylvania; 350,000 jobs in the national economy), a hand assembler (DOT #721.684-022) (20,000 jobs in the Commonwealth of Pennsylvania; 400,000 jobs in the national economy), and a finisher (DOT #781.687-070) (15,000 jobs in the Commonwealth of Pennsylvania; 200,000 jobs in the national economy).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2013, through the date of this decision (20 CFR 404.1520(g)).**

**DECISION**

Based on the application for a period of disability and disability insurance benefits protectively filed on February 10, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.


/s/ *Richard Zack*
_____
Richard Zack
Administrative Law Judge

July 19, 2016
_____
Date

# LIST OF EXHIBITS

---

## **Payment Documents/Decisions**

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | T2-Signed by S.Amanullah,PhD/LTedesco MD / Disability Determination Explanation | | 06/13/2014 | 7 |
| HO 2A | T 2  Disability Determination Transmittal | | 06/13/2014 | 1 |

## **Jurisdictional Documents/Notices**

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T 2 Initial Denial | | 06/16/2014 | 4 |
| HO 2B | Request for Hearing by ALJ | | 07/06/2014 | 1 |
| HO 3B | Request for Hearing Acknowledgement Letter | | 07/18/2014 | 10 |

## **Non-Disability Development**

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits | | 04/08/2014 | 2 |
| HO 2D | Seperation from Employment/Settlement | | 04/23/2014 | 24 |
| HO 3D | Queries | | | 9 |

## **Disability Related Development**

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Field Office | | M Kirk | to 04/08/2014 | 3 |
| HO 2E | Disability Report - Adult | | | | 7 |

| Component | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 3E | Function Report - Adult | | Claimant | to 05/02/2014 | 11 |
| HO 4E | DDS Disability Worksheet | | DDS | 04/09/2014 to 06/13/2014 | 5 |
| HO 5E | Disability Report - Field Office | | M Kirk | | 2 |
| HO 6E | Disability Report - Appeals | | | | 6 |
| HO 7E | DDS Disability Worksheet | | | 06/05/2015 to 06/11/2015 | 5 |
| HO 8E | RATING LETTER | | DEPT OF VETERANS AFFAIRS | to 06/11/2015 | 16 |
| HO 9E | Medications | | | | 1 |
| HO 10E | Recent Medical Treatment | | | | 1 |
| HO 11E | Resume of Vocational Expert | | | | 3 |
| HO 12E | DDS Disability Worksheet | Subsequent to hearing | DIB | 04/21/2016 to 04/29/2016 | 5 |
| HO 13E | Development Summary Worksheet | Subsequent to hearing | DDS | 05/11/2016 to 06/20/2016 | 5 |
| HO 14E | Proffer Correspondence | Subsequent to hearing | ODAR | to 06/27/2016 | 2 |
| HO 15E | Claimant Response to Proffer | Subsequent to hearing | Claimant | to 07/06/2016 | 4 |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Consultative Examination Report | | Jay Willner, MD, IMA Professional Services of PA | to 05/29/2014 | 17 |
| HO 2F | Office Nts/Hosp Rcds/Labs/ER/Meds | | VA Medical Center - Wilkes Barre | 07/15/2010 to 06/13/2014 | 657 |

| HO 3F | Vitals/Labs | | Department Of Veterans Affairs | 03/28/2013 to 07/01/2014 | 49 |
|---|---|---|---|---|---|
| HO 4F | health summaries/xrays/labs | | WILKES-BARRE VA MEDICAL CEN | 07/26/2013 to 06/09/2015 | 153 |
| HO 5F | TREATMENT NOTES/VITALS | | WB VA MEDICAL CENTER | 07/17/2010 to 02/18/2015 | 110 |
| HO 6F | Laboratory Test Report | | Dept of Veterans Affairs | to 11/16/2015 | 7 |
| HO 7F | Emergency Exam and Treatment | | Northeast Counseling Services | to 04/25/2016 | 8 |
| HO 8F | Hospital Records--Admissions, Progress, Radiology, Labs | Subsequent to hearing | Wilkes-Barre VA Medical Center | 09/10/2015 to 04/27/2016 | 76 |
| HO 9F | Laboratory Test Report | Subsequent to hearing | Lehigh Valley Hospital - Hazleton | 04/25/2016 to 04/26/2016 | 23 |
| HO 10F | Inpatient Hospital Records | Subsequent to hearing | The Meadows Psychiatric Center | 04/26/2016 to 05/10/2016 | 9 |